UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    Michael J. Waldron,

                  Debtor.

Chapter 7

Case No. 13-12190-1-rel

---

CURTIS LUMBER CO., INC.,

                  Plaintiff,

vs.

MICHAEL J. WALDRON,

                  Defendant.

Adversary Proceeding No. _____

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

       Plaintiff-Creditor Curtis Lumber, Inc., by and through its undersigned counsel, alleges for its complaint as follows:

       1.     The Court has jurisdiction to hear the complaint in this proceeding pursuant 28 U.S.C. § 157(a)(b)(2)(I) and 11 U.S.C. § 523(a)(4).

       2.     The plaintiff, Curtis Lumber, Inc. ("Curtis Lumber") is a corporation formed pursuant to the laws of the State of New York with its principal place of business located at 885 Route 67, Ballston Spa, New York 12020.

       3.     On information and belief, the defendant and debtor in this Chapter 7 bankruptcy, Michael J. Waldron ("Defendant"), is and at all times relevant to this Complaint was a resident of Saratoga County, New York.

**The Underlying Claim**

       4.     Curtis Lumber, Defendant and non-debtor Waldron Builders, Inc. ("WBI") are parties to that certain Credit Application and Agreement dated as of July 15, 2010 (the "Agreement"), a copy of which is attached hereto as part of **Exhibit A**.

5. Pursuant to the terms of the Agreement, Curtis Lumber agreed to allow WBI to purchase goods on account and to invoice WBI on a monthly basis for such purchases. WBI agreed to pay for all invoiced purchases upon receipt of such monthly invoices.

6. Pursuant to the terms of the Agreement, WBI expressly agreed to pay its account balance in full upon receipt of the monthly statement. WBI further agreed that any balance left unpaid at the end of any given month would be considered overdue, and WBI agreed to pay late charges of 1 ½% interest per month (18% a.p.r.) on any such unpaid balance.

7. Pursuant to the terms of the Agreement, Defendant also unconditionally and personally guaranteed all past, present and future indebtedness by WBI to Curtis Lumber.

8. Despite the foregoing obligations, as well as demand having been made prior to the filing of this action, neither Defendant nor WBI have made payments due as set forth in numerous invoices delivered to both Defendant and WBI, each of which reflects purchases made on WBI's account from Curtis Lumber.

9. On June 25, 2013, Curtis Lumber filed suit against Defendant and WBI in the Supreme Court for the State of New York, County of Saratoga ("State Court Matter"), seeking recovery of the unpaid amounts plus interest and costs as allowed under the Agreement. A copy of the State Court Matter Summons and Verified Complaint is attached hereto as **Exhibit A.**

10. Defendant and WBI were duly served with the State Court Matter Summons and Verified Complaint but neither served nor filed any response.

11. On August 22, 2013, Curtis Lumber moved for an order granting a default judgment against WBI and Defendant in the State Court Matter. On September 19th, 2013, the Hon. Stephen A. Ferradino executed an order granting the requested default judgment. A copy of the executed order is attached hereto as **Exhibit B**.

12. Curtis Lumber did not enter Justice Ferradino's order, however, as it was executed and delivered after the filing of the Defendant's Chapter 7 bankruptcy petition. Instead, upon receipt of the executed order, Curtis Lumber's undersigned counsel wrote to Justice Ferradino to inform him of the bankruptcy petition, of Curtis Lumber's consequent intent to comply with the automatic stay imposed under 11 U.S.C. § 362 and to not enter the order, and to request that the Court treat the order as rescinded, pending renewal of Curtis Lumber's motion following the conclusion of the Defendant's Chapter 7 bankruptcy, if still appropriate.

### Grounds for Non-Dischargeability

13. The aforementioned payment defaults occurred despite, on information and belief, WBI having received full payment from each of the parties with whom it contracted to perform the jobs on which the goods purchased from Curtis Lumber were used ("Jobs").

14. WBI, however, was obligated by the terms of the New York Lien Law to maintain proper trust accounts for each project or job performed, and the monies received as payments for such jobs should have been deposited into such accounts and used for payment of the debts owed to Curtis Lumber (and any other materials suppliers or subcontractors) in conjunction with each such job.

15. Pursuant to Article 3-A of the New York Lien Law, funds received by Defendant for the construction and improvement of real property in the State of New York constitute assets of a trust created for the benefit of a variety of parties associated with the improvements to be made on the real property at issue.

16. In the case of the Jobs on which WBI used materials obtained from Curtis Lumber, WBI is and was the trustee of trusts established by law with respect to each such Job, and it was and is required to use any payments received in conjunction with such Jobs as trust

assets for payment to the materialmen and suppliers – such as Curtis Lumber – who furnished materials for use on the Jobs at issue.

17. WBI's failure to pay Curtis Lumber for materials used on the Jobs – in particular, for those Jobs for which WBI received full payment – is *prima facie* evidence of its failure to use trust assets as required by law, that is, for the benefit of Curtis Lumber, a material supplier on these Jovs and a trust beneficiary under the Lien Law.

18. As WBI's principal, president, and sole shareholder, Defendant is responsible for WBI's payment failures and for its breach of its fiduciary obligations owed to Curtis Lumber under the Lien Law.

19. First, the indebtedness at issue was incurred by virtue of the Defendant's personal guaranty of payment. WBI was only able to open a Curtis Lumber account and to incur the aforementioned indebtedness as a result of the Defendants personal and individual pledge guaranteeing that WBI would pay for the purchases made on such account.

20. Moreover, at all times relevant to the allegations of this Complaint, Defendant had and exercised total and complete control over WBI such that WBI's payment failures and breaches of fiduciary duty are entirely and completely attributable to the Defendant, and such that any distinction between WBI and the Defendant is illusory and should be disregarded.

21. Defendant was the president and sole or controlling shareholder of WBI, and by virtue of these positions, alone, Defendant may be held liable for WBI's tortious breaches of fiduciary duty.

22. Defendant may also be held liable for such breaches as WBI's "alter ego" since Defendant had complete and exclusive control over WBI's finances including but not limited to being a signatory on all of WBI's bank accounts and having exclusive and/or ultimate decision-

making power within WBI to direct WBI to make all payments to any person or entity from these accounts.

23. On information and belief, Defendant, individually, also regularly caused WBI to make payments from trust assets to himself or to other corporate affiliates of WBI which he also controlled.

24. On information and belief, on each of the jobs underlying WBI's indebtedness to Curtis Lumber, the Defendant personally caused WBI to make payments to himself or to other corporate affiliates of WBI which he also controlled, with such payments being made out of trust assets pertaining to such jobs in violation of WBI's and the Defendants fiduciary obligations to Curtis Lumber.

25. Defendant, individually, stands in the same shoes as WBI and is a Lien Law trustee with respect to the WBI jobs in which the debts to Curtis Lumber have been incurred.  As a trustee, Defendant, individually, is and was in a fiduciary relationship with Curtis Lumber.

26. Pursuant to Article 3-A of the New York Lien Law, Curtis Lumber is a beneficiary of the trusts created by virtue of Defendant's acceptance of funds in relation to each of the jobs into which Curtis Lumber provided materials.

27. Defendant and WBI breached their fiduciary duties to Curtis Lumber by failing to use the proceeds from the Jobs to pay for the materials purchased on WBI's account from Curtis Lumber for use in such Jobs.

28. Moreover, on information and belief, Defendant incurred the aforesaid indebtedness despite knowing that he would not be able to repay the amounts due, and with the intent of not repaying the aforesaid amounts to Curtis Lumber.  Said belief is based upon, inter alia, (a) the fact that Defendant continued to incur charges without making payments as required

under the terms of the Agreement; (b) Defendant ignored repeated attempts by Curtis Lumber to engage in discussions regarding the payment of Defendant's past due account; (c) Defendant ignored all legal process brought to bear in order to compel him to pay the amounts due up until Curtis Lumber filed a motion for default judgment against him, and even then, rather than engage in any attempt to resolve the debts, Defendant filed for Chapter 7 bankruptcy protection in a transparent attempt to avoid paying his debt.

### AS AND FOR A FIRST CAUSE OF ACTION – NON-DISCHARGEABILITY OF DEBT (11 U.S.C. § 523(a)(4))

29. Curtis Lumber repeats and realleges paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. By virtue of WBI's receipt of funds in relation to each of the Jobs, WBI is a trustee under Article 3-A of the New York Lien Law and owes Curtis Lumber, as a supplier of materials for the Jobs, and, therefore, a beneficiary of the trusts, fiduciary duties.

31. By virtue of his position with, ownership of and total control over WBI and its ability to perform its fiduciary duties, Defendant, individually, owes Curtis Lumber the same Lien Law-created fiduciary duties in relation to the Jobs as WBI.

32. Defendant has committed fraud and defalcation by breaching his fiduciary duties to Curtis Lumber. In particular, by not paying for the materials he and WBI purchased on account from Curtis Lumber in relation to each such Job, Defendant has, in violation of the New York Lien Law, failed to use trust assets for the benefit of Curtis Lumber, a trust beneficiary, and has instead misappropriated the assets of the trusts established by the Defendant's and WBI's receipt of money in relation to each of the Jobs.

33. Defendant has committed fraud and defalcation by making purchases on his Curtis Lumber account that he either knew he could not pay for when such purchases were made, or that he never intended to pay for.

34. By virtue of the aforesaid breaches of fiduciary duty and defalcation, pursuant to 11 U.S.C. § 523(a)(4), the full amount of the indebtedness as reflected in the State Court Action Verified Complaint, being $190,130.71 plus interest at 18% per annum, plus attorneys' fees and other costs associated with the collection of the indebtedness, is a non-dischargeable debt.

WHEREFORE, Curtis Lumber Co., Inc., respectfully requests a judgment against the Defendant, Michael J. Waldron, as follows:

1. For Curtis Lumber on its First Cause of Action, declaring the indebtedness as reflected in the State Court Action Verified Complaint, being $190,130.71 plus interest at 18% per annum, plus attorneys' fees and other costs associated with the collection of the indebtedness, in full, to be a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4); and

2. Ordering such other and further relief as the Court may deem just and proper.

Dated: Saratoga Springs, New York
February 28, 2014

THE LAW OFFICE OF STEVEN D. GREENBLATT

By: /s/ Steven D. Greenblatt
Steven D. Greenblatt, Esq.
480 Broadway, Suite 328
Saratoga Springs, New York 12866
Tel. (518) 824-1254
Fax. (518) 824-5704

*Attorney for Curtis Lumber Co., Inc.*