UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
In re:

MICHAEL J. WALDRON,                                 Chapter 7
                                                    Case No. 13-12190
                      Debtor(s).
----------------------------------------------------------
CURTIS LUMBER CO., INC.,

                      Plaintiff(s),
   vs.                                              Adv. No. 14-90008

MICHAEL J. WALDRON,

                      Defendant(s).
----------------------------------------------------------
APPEARANCES:

LAW OFFICES OF STEVEN D.                     *Steven D. Greenblatt, Esq.*
GREENBLATT
*Attorneys for Curtis Lumber Co., Inc.*
480 Broadway, Ste. 328
Saratoga Springs, NY 12866

LAW OFFICES OF RICHARD CROAK            *Richard Croak, Esq.*
*Attorneys for Michael J. Waldron*
314 Great Oaks Blvd.
Albany, NY 12203

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

     Currently before the court is the motion for summary judgment filed by Curtis Lumber

Co., Inc. (the "Plaintiff"). The Plaintiff commenced this adversary proceeding objecting to the

dischargability of its debt pursuant to 11 U.S.C. § 523(a)(4),[1] based upon the alleged

misappropriation of trust funds in violation of Article 3-A of the New York Lien Law by

Michael J. Waldron (the "Debtor" or "Defendant").

---

[1] All section references refer to title 11 of the United States Code unless otherwise noted.

## JURISDICTION

The court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and (b)(2)(I), and 1334(b).

## FACTS

Local Bankruptcy Rule 7056-1 requires that a motion for summary judgment be accompanied by a statement, in numbered paragraphs, of the material facts as to which there is no dispute, supported by citations to the record. LBR 7056-1(a). The party opposing the motion is then charged with filing a separate statement, in numbered paragraphs, of each material fact as to which they contend there is a genuine dispute, supported by citations to the record. LBR 7056-1(c). Any material fact that is not controverted may be deemed admitted by the court. LBR 7056-1(e). The Plaintiff failed to file the required statement of uncontested facts with its motion. The Debtor, in turn, did not file a response setting forth those facts, if any, that are controverted. The local rule with respect to summary judgment motions exists, in part, to assist the court in managing its docket. While Local Bankruptcy Rule 7056-1 provides that the court may deny a motion for summary judgment if the moving party does not file a statement of undisputed facts, the Debtor did not object to the Plaintiff's non-compliance, and both parties expended considerable time in connection with the motion. Thus, the court will exercise its discretion to overlook the Plaintiff's non-compliance and review the record before it to determine whether genuine issues of material fact exist.

The following facts are derived largely from the court's review of the deposition transcripts of the Debtor and the office manager of Waldron Builders, Inc. ("WBI"), as well as the affidavits of the Plaintiff's credit manager and the Debtor. The Debtor is the sole shareholder, president, secretary, and treasurer of WBI, a now defunct construction contractor

and homebuilder incorporated under the laws of the State of New York in 2006. (Waldron Dep. 9, 10, Aug. 18, 2014.) WBI had four employees: the Debtor, an office manager, and two others who, along with the Debtor, performed labor for WBI. (Waldron Dep. 12; Waldron Aff. ¶¶ 2, 14, Apr. 8, 2015.) All four employees received weekly salaries. (Waldron Dep. 13.) Except for interior carpentry, WBI subcontracted out the work on its construction jobs. (Waldron Dep. 23.) WBI ceased doing business and dissolved in 2013. (Waldron Dep. 11.) Prior to its dissolution, WBI constructed approximately 20 residential homes. (Waldron Dep. 9.)

The Debtor was also the president and sole shareholder of Titan Mechanical Contracting, Inc. ("Titan"), a plumbing, electrical and HVAC business. (Waldron Dep. 34, 53.) WBI and Titan both leased office space in a building owned by the Debtor's father. (Waldron Dep. 10, 29-30.) Titan did work for WBI, as well as standby generators, HVAC and electrical work for private customers. (Waldron Dep. 39.) The Debtor can recall only one WBI job that Titan did not bid on. (Waldron Dep. 45.) WBI did not guarantee any obligations of Titan. (Waldron Dep. 53.) The Debtor personally guaranteed a revolving line of credit with a local bank and debts to vendors for Titan. (Waldron Dep. 55-57.)

The Plaintiff is a supplier of building and construction materials. (Golden Aff. ¶ 2, Mar. 25, 2014.) WBI and the Plaintiff were parties to a Credit Application and Agreement dated July 15, 2010 (the "Credit Agreement"). (Golden Aff. Ex. A.) Pursuant to the Credit Agreement, WBI was given an initial credit line of $150,000 with payment terms of 60 days, which means WBI was invoiced once every 60 days instead of monthly. (Golden Aff. ¶¶ 7-8.) The Debtor personally guaranteed WBI's payment under the Credit Agreement. (Golden Aff. ¶ 6.) WBI purchased building materials from the Plaintiff under the Credit Agreement that were utilized pre-petition for improvements to real property, including the four construction jobs at issue.

3

(Golden Aff. ¶¶ 11-12.)  When WBI ordered materials from the Plaintiff, someone at WBI would provide the Plaintiff with an address that corresponded with the job the materials were to be used on.  (Waldron Dep. 74.)  Internally, the Plaintiff set up sub-accounts so all purchases for a given job could be identified and grouped together.  (Golden Aff. ¶ 11.)  The Plaintiff referenced the sub-accounts using consecutive numbering based upon the date the project was established and the project address.  (Golden Aff. ¶ 11.)  When the Plaintiff issued monthly statements to WBI, it included separate statements for each sub-account.  (Golden Aff. ¶ 13.)  Titan did not purchase materials from the Plaintiff.  (Waldron Dep. 71.)

WBI's office manager dealt with the Plaintiff on general account issues.  The office manager and the Debtor were the only ones with signing authority on WBI's bank accounts.  (Waldron Dep. 52-53.)  According to the office manager, she and the Debtor would have a "money meeting" once a week, or whenever money came in, and the Debtor would direct who was to be paid.  (Huston Dep. 39, Sept. 29, 2014.)  Sometimes the office manager would disagree with the Debtor's decision on payment priority.  (Huston Dep. 39, 103.)  Her preference was to pay the oldest bills first.  (Huston Dep. 40.)  The office manager indicated that the Debtor made the ultimate decisions on who was paid.  (Huston Dep. 39-41.)  The Debtor, however, said that he only sometimes had input on whom to pay because, generally, the office manager only sought his input when she had a question about paying someone.  (Waldron Dep. 37.)

According to the Debtor, WBI began experiencing financial problems in August 2012 due, in part, to his pending divorce.  (Waldron Aff. ¶¶ 6, 19.)  Plaintiff's representatives had discussions both with WBI's office manager and with the Debtor concerning payment of WBI's outstanding debt.  jj(Golden Aff. ¶ 25; Houston Dep. 116; Waldron Aff. ¶ 8.)  WBI ultimately

4

stopped doing business because it could not obtain financing to construct new homes. (Waldron Dep. 11.)

The Plaintiff commenced an action against WBI and the Debtor in the New York State Supreme Court, Saratoga County, for the balance due under the Credit Agreement and the Debtor's guaranty. In August 2013, the Plaintiff moved for a default judgment. The Debtor filed a voluntary petition for relief under chapter 7 on August 31, 2013. The majority of the Debtor's scheduled $296,577.65 in unsecured debt consists of obligations associated with WBI. The Plaintiff was listed on schedule F of the Debtor's petition as a creditor holding an unsecured claim in the amount of $190,130.71. On February 28, 2014, the Plaintiff objected to the dischargeability of its debt under § 523(a)(4).

The debt due the Plaintiff represents unpaid invoices for building materials it supplied to WBI for the following residential construction jobs:

| Job Number | Job Name | Amount Outstanding |
| --- | --- | --- |
| 5 | 150 North Greenfield Road | $5,640.37 |
| 6 | 25 Brampton Lane | $39,269.28 |
| 7 | 208 Casey Road | $6,436.16 |
| 8 | Lot 32 Ridgeview House #21 | $131,836.68 |

(Golden Aff. ¶ 11; Ex. B.)

According to WBI's checking account registers, it received monies from the four property owners (the "Homeowners") for the improvements made. (Greenblatt Aff. Exs. A, J, K, L, Q, R, BB, DD, LL, PP, and TT, Mar. 25, 2015.) WBI did not maintain separate bank accounts for each of its construction jobs, and the Homeowners' payments for the four jobs were comingled. WBI did, however, maintain accounting records for its construction jobs using

5

Peachtree software. (Waldron Dep. 16; Huston Dep. 19.) Based upon the records before the court, it is unclear whether WBI was paid in full for the four construction jobs at issue.

## ARGUMENTS

The Plaintiff asserts that it is a trust fund beneficiary under Article 3-A of the New York Lien Law ("Lien Law Beneficiary") because it supplied building materials to WBI for the four construction jobs at issue. The Plaintiff further alleges that WBI and the Debtor, while acting as fiduciaries, misappropriated trust funds by distributing monies received from the Homeowners to non-beneficiaries. The Plaintiff relies upon WBI's checking account registers and various reports from WBI's Peachtree software which it contends show deposits from the Homeowners and checks drawn against those deposits for items that do not necessarily correspond to the appropriate job or were not paid to Lien Law Beneficiaries. The Plaintiff argues these diversions of trust funds amount to a defalcations by the Debtor under § 523(a)(4).

The Debtor argues that the Plaintiff is not a Lien Law Beneficiary, but is instead an unsecured creditor pursuant to the Credit Agreement and the Debtor's guarantee. Alternatively, if the Plaintiff is found to be a Lien Law Beneficiary, the Debtor asserts four defenses. First, he argues he did not owe a fiduciary duty to the Plaintiff. Second, the Debtor contends the Plaintiff waived or subordinated its Lien Law claims because it never demanded payment with respect to a specific job, and it otherwise agreed to defer payment until WBI sold a home to be constructed in a new residential development. Next, he argues the alleged diverted trust funds were used to pay proper Lien Law Beneficiaries on the four construction jobs at issue. Lastly, he asserts that he advanced tens of thousands of dollars of personal money to WBI that would have replenished any diverted funds.

6

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(2); Fed. R. Bankr. P. 7056. The movant has the burden to show that no genuine factual dispute exists. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *Id*. If the moving party meets its initial burden, to defeat summary judgment, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e)(2); Fed. R. Bankr. P. 7056.

Section 523(a) sets forth a number of debts that are excepted from discharge either because they result from unacceptable conduct, such as fraud and larceny, or because their discharge would conflict with competing policies, such as student loans and domestic support obligations. *See* 11 U.S.C. §523(a)(1)-(19). To give effect to the "fresh start" policy of the Code, exceptions to discharge under § 523 are to be strictly and literally construed against a creditor and liberally construed in favor of the debtor. *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999). The burden under § 523 is on the moving party and the requisite level of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279. Section 523(a)(4) bars from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To prove its § 523(a)(4) claim, the Plaintiff must establish (1) a fiduciary relationship between it and

7

the Debtor and (2) a defalcation by the Debtor during that relationship. *In re Hayes*, 183 F.3d at 167.

*Fiduciary Relationship*

"Fiduciary" is not defined in the Bankruptcy Code. *Id.* "'The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)'; rather the term's scope 'is a matter of federal law.'" *Mirarchi v. Nofer* (*In re Nofer*), 514 B.R. 346, 253 (Bankr. E.D.N.Y. 2014) (quoting *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998)). Generally, a "fiduciary relationship" under § 523(a)(4) involves an express trust or technical trust, however, the Second Circuit has established that even in the absence of an actual trust, a fiduciary relationship for purposes of § 523(a)(4) may exist where there is a special trust or confidence between the parties. *In re Hayes*, 183 F.3d at 166 (holding the attorney-client relationship is a fiduciary relationship under § 523(a)(4)). The elements of an express trust include a clearly defined res and an intent to create a trust relationship. *Raso v. Fahey* (*In re Fahey*), 482 B.R. 678, 687 (1st Cir. BAP 2012). A technical trust is usually described as one created by statute or common law. *Id.* at 688. For purposes of § 523(a)(4), the fiduciary relationship must exist prior to the creation of the underlying indebtedness and "cannot be said to arise merely from the wrongful conduct itself." *Zohlman*, 226 B.R. at 773 (citations omitted). While generally a matter of federal law, state law is implicated to the extent it defines the elements of a trust or regulates fiduciary obligations. *In re Nofer*; 514 B.R. at 254 (citation omitted).

The Lien Law provides that monies received by a contractor for an improvement to real property constitute assets of a trust for the benefit of the subcontractors, architects, engineers, surveyors, laborers and materialmen who perform labor or furnish supplies for that improvement,

8

as well as for specified taxes, insurance and benefits related to wages, and premiums for bonds and insurance associated therewith. N.Y. Lien Law §§ 70, 71. Under the Lien Law, a contractor is "a person who enters into a contract with the owner of real property for the improvement thereof." N.Y. Lien Law § 2, subd. 9. A "materialman" includes any person who furnishes material to a contractor for a given improvement. N.Y. Lien Law § 2, subd. 12. The Lien Law trust commences when the owner pays the contractor for the improvement, whether or not there are any beneficiaries of the trust at that time. N.Y. Lien Law § 70(3). "[A]ny transaction by which any trust asset is paid, transferred or applied for any purpose other than a purpose of the trust . . . before payment . . . of all trust claims . . . is a diversion of trust assets." N.Y. Lien Law § 72(1). The primary purpose of Article 3-A of the Lien Law is to ensure that those who directly expend labor and materials to improve real property at the direction of a contractor or property owner receive payment for the work performed or materials supplied. *See ECD NY, Inc. v. Britt Realty, LLC*, 47 Misc.3d 923, 925-26, 7 N.Y.S.3d 861 (N.Y. Sup. Ct. 2015) (citations omitted).

Based upon the record before it, the court finds that WBI was a contractor under the Lien Law with respect to the four construction jobs at issue and, thus, a statutory trustee with respect to funds received from the Homeowners. *See* N.Y. Lien Law § 2, subd. 9; N.Y. Lien Law § 70. As it is undisputed that the Plaintiff supplied building materials for the four construction jobs at issue, the court also finds that the Plaintiff was a materialman under the Lien Law and, accordingly, a Lien Law Beneficiary with respect to each job. *See* N.Y. Lien Law § 2, subd. 12; N.Y. Lien Law § 71. Because WBI received at least some payments from the Homeowners, four separate Lien Law trusts were created with respect to each of the four construction jobs.[2] Under

---

[2] While the Debtor argues WBI's relationship with the Plaintiff does not fall under the Lien Law, he does so in conclusory fashion and without factual or legal support for his position. Therefore, these arguments will not be considered.

9

the Lien Law, WBI was obligated to apply the trust assets to pay the Lien Law Beneficiaries, including the Plaintiff, before using the assets for other purposes. *See* N.Y. Lien Law § 72. Therefore, any payment by WBI of trust funds held for a particular construction job to a non-beneficiary prior to payment of the Plaintiff's claim for building materials supplied for that job constitutes a diversion of trust funds in violation of WBI's fiduciary obligation under the Lien Law. *See Id.*

While WBI, as a contractor, is a statutory trustee under the Lien Law, *see* N.Y. Lien Law § 2, subd. 9, the Lien Law does not expressly state that an officer of the contractor may be liable for improper diversion of trust funds. However, there is authority under New York common law to extend the fiduciary obligation of the corporation to its officers and directors. *Schwadron v. Freund*, 69 Misc. 2d 342, 348, 329 N.Y.S.2d 945 (Sup. Ct. 1972) (citing 4 Scott, Law of Trusts, 3rd Ed., s 326.3; *Wechsler v. Bowman*, 285 N.Y. 284, 34 N.E.2d 322 (1941)). Relying on the principle that officers and directors of a corporate trustee have a fiduciary duty to the beneficiaries of a trust administered by the corporation to prevent its misuse of trust funds, New York courts have found officers of a corporation may be personally liable under the Lien Law for the corporation's diversion of funds. *See Ippolito v. TJC Dev., LLC*, 83 A.D.3d 57, 70-71, 920 N.Y S.2d 108 (App. Div. 2011); *Holt Constr. Corp. v. Grand Palais, LLC*, 108 A.D. 3d 593, 969N.Y.S.2d 499 (App. Div. 2013). The Debtor, as the sole officer and director of WBI, owed a common law fiduciary duty to the Plaintiff, as a Lien Law Beneficiary. Moreover, because the Lien Law trusts were created when WBI received payments from the Homeowners, the Debtor became a fiduciary prior to any alleged wrong. There being no material or genuinely disputed factual issues, the court concludes the Debtor's fiduciary obligation, arising in common law and related to a statutory trust, falls within § 523(a)(4)'s contemplation of fiduciary. *Bruce Supply*

*Corp. v. Kofsky (In re Kofsky)*, 351 B.R. 123, 129 (Bankr. S.D.N.Y 2006); *Jasel Bldg. Products Corp. v. Polidoro (In re Polidoro)*, 12 B.R. 867 (Bankr. E.D.N.Y. 1981).

*Defalcation*

In order for the Debtor to be held accountable for misappropriations by WBI, it must first be established that there was in fact a diversion of trust funds by WBI.[3] The Plaintiff argues WBI diverted trust funds to the extent it paid the Debtor's wages, WBI's office manager's salary, and office overhead expenses from trust assets. The Debtor contends there was no violation under the Lien Law because he provided labor on the jobs at issue. Following the Debtor's logic, however, would allow the Debtor to establish a *quantum meruit* credit, necessarily in derogation of the rights of those individuals the Lien Law is meant to protect. *See Louis Greenberg, Inc. v. Instant Heat & Power Corp.*, 33 Misc.2d 1081, 1082, 227 N.Y.S.2d 76 (N.Y. Sup. Ct. 1962). Contrary to the Debtor's contentions, the Lien Law is clear that the contractor and its officers are not Lien Law beneficiaries and, as such, they are entitled to any remainder of the trust only after the payment of trust beneficiaries. *Id.* This is true even if the officer's compensation is based upon labor he provided on a job. *Id.*; *Schwadron v. Freund*, 69 Misc.2d 342, 345 (the cost of improvements, as defined in Lien Law 71(2), does not include administrative expenses or officer salaries). Likewise, WBI's office manager's salary and office overhead expenses are administrative expenses of WBI and do not qualify as permitted expenses from trust funds under the Lien Law. *See Niaztat Iron Works v. Tri-Neck Constr. Corp.*, 62 Misc.2d 228, 308 N.Y.S.2d 427 (N.Y. Sup. Ct. 1970). Thus, as a matter of law, the court finds WBI diverted monies in violation of the Lien Law to the extent it used trust assets to pay the

---

[3] The Debtor offers no writing, conversation between the parties, or legal or statutory authority to support his theories that the Plaintiff waived or subordinated its Lien Law Beneficiary status. Likewise, the Debtor has provided no affirmative evidence that he replenished trust funds allegedly diverted. Therefore, these arguments will not be considered.

Debtor's salary, including child support payments made on the Debtor's behalf from his wages; WBI's office manager's salary; and office overhead, including, Time Warner Cable, Saratoga Publishing, Michele Bromley, Electronic Office Products, Crystal Rock, LLC, Pitney Bowes, Verizon, Building Industry Employers of New York State, Capital Region Builders & Remodelers Association, and Saratoga Builders (dues to professional associations), Saratoga County Chamber of Commerce (dues to Chambers of Commerce), attorney fees, Verizon Wireless, payroll service fees, Luther Waldron (rent), C & S Construction (office equipment and furniture), Electronic Office Products (office copier), MWH Design (advertising), King's Glass (truck mirror), Old Saratoga Athletics (team sponsorship), Titan (office toilet), Northco Products (office copier), MSA Group (auto insurance), bank overdrafts, office cleaning services, Staples, Tangora Technologies (office thermostat), accountant fees, National Grid (office utilities), and reimbursements for office supplies and gas.

While the above-referenced portion of the Plaintiff's claim clearly arose from diversions committed by WBI, material questions of fact remain as to all of the other payments comprising the Plaintiff's claim. Although it appears from WBI's bank statements and software reports that trust funds from one construction job were being used to pay expenses for other construction jobs, the Debtor contends this is not an accurate reading of WBI's internal records. The Plaintiff and the Debtor also disagree as to whether certain payees are Lien Law Beneficiaries of the trust funds dispersed by WBI.[4] Therefore, material questions of fact as to whether certain subcontractors, suppliers, insurance carriers (including workers' compensation and health, disability, and liability insurance), and employees paid by WBI fall within the Lien Law's

---

[4] If the Plaintiff had complied with Local Rule 7056-1(a) and the Debtor had been given the opportunity to effectively respond pursuant to Local Rule 7056-1(c), the record would be clear as to which specific accounting reports and disbursements by WBI are in dispute.

contemplation of beneficiary. (Waldron Aff. Attachment.) Because WBI comingled trust funds in its bank accounts and because this does not constitute a violation of the Lien Law, *McGovern, LLC v. Waterscape Resort, LLC* (*In re Waterscape Resort, LLC*), 483 B.R. 601, 611 (Bankr. S.D.N.Y. 2012) (citations omitted) (trust assets may be comingled and the trust funds treated as running bookkeeping balances rather than as segregated accounts), material questions of fact prevent the court from determining whether the Debtor committed diversions by paying these entities prior to paying the Plaintiff.

Having found WBI committed certain diversions, the next question in determining whether the Debtor can be found to have committed a § 523(a)(4) defalcation is whether the Debtor can be held personally liable for WBI's diversions. As mentioned above, an individual officer of a corporate trustee may be held personally liable for breach of a Lien Law trust. *See supra* p. 10. To extend a corporate trustee's liability to its officer, the officer must be found to have participated in or known about the use of trust funds for non-trust purposes. *See In re Polidoro*, 12 B.R. 867, 870-71 (citations omitted); *Holt Constr. Corp. v. Grand Palais, LLC*, 108 A.D. 3d 593, 597 (citations omitted) (officer of corporate trustee personally liable under Lien Law for knowingly participating in a diversion of trust assets); *see Ippolito v. TJC Dev., LLC*, 83 A.D.3d 57 (citing *Fleck v. Perla*, 40 A.D.2d 1069, 339 N.Y. S. 2d 246) (corporation's officer personally liable for his acts which constitute a conversion of property of a third person); *see also Atlas Bldg. Sys. v. Rende*, 236 A.D.2d 494, 495, 653 N.Y.S.2d 694 (N.Y. App. Div. 1997) (corporate officer personally liable for participation in a breach of trust). The Debtor contends he shared control of the trust assets held by WBI with WBI's office manager. Although it seems somewhat incredible that the Debtor did not oversee WBI's finances and exercise final decision making authority, the Debtor disputes this fact in his deposition testimony. The Debtor also

denies the misuse of trust assets by WBI. He asserts the payments in question were allowed under the Lien Law, and there could be no diversion of trust funds if WBI paid only legitimate business expenses. In his answering affidavit, the Debtor contends he did not believe the Lien Law applied to the Credit Agreement. He admits WBI was struggling financially, but asserts WBI was also in contact with the Plaintiff about its outstanding debt, and the Plaintiff expressed a willingness to work with WBI. The Debtor's deposition testimony and affidavit raise a material issue of fact as to the Debtor's participation in or knowledge of any misapplication of trust funds and, therefore, the court cannot rule as a matter of law on the question of the Debtor's personal liability in relation to any of WBI's diversions.

Moreover, even if the Plaintiff can establish personal liability on the part of the Debtor for each of the diversions, a diversion does not necessarily equate to a defalcation under § 523(a)(4). Defalcation requires an "intentional wrong." *Bullock v. BankChampaign N.A.*, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). The Supreme Court has held that in the context of § 523(a)(4), a defalcation "includes a culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757. Thus, under *Bullock*, in order to conclude a defalcation occurred, a court must make appropriate findings of conscious misbehavior or extreme recklessness on the part of the Debtor. The Debtor's state of mind is crucial to resolution of the Plaintiff's § 523(a)(4) cause of action, namely, if there was a breach of fiduciary duty by the Debtor, was it the result of negligence or inadvertence or was it done with the requisite scienter.[5]

---

[5] At first glance, it appears the standard for attributing personal liability to the Debtor for WBI's diversion is similar to § 523(a)(4)'s defalcation standard. It is possible a finding that the Debtor is personally liable for WBI's diversion would satisfy § 523(a)(4)'s definition of defalcation. However, because the Plaintiff has not established that the Debtor is personally liable for WBI's

14

**CONCLUSION**

The disposition of this proceeding will depend much on the Debtor's credibility and demeanor which can best be determined after hearing his testimony and observing him at trial. Based upon the foregoing, the Plaintiff has established that WBI diverted at least some trust assets in violation of the Lien Law, and the Debtor is a fiduciary of the Plaintiff for purposes of § 523(a)(4).  Nevertheless, material questions of fact remain as to whether there were diversions with respect to payments made by WBI from trust assets to certain subcontractors, suppliers, insurance carriers, and employees; whether the Debtor can be held personally liable for any of WBI's diversions; and, if so, whether the diversions amount to defalcation under applicable precedent.  Accordingly, it is hereby

**ORDERED**, that summary judgment is denied and this matter shall proceed to trial subject to the legal and factual issues decided herein; and it is further

**ORDERED**, that a pretrial conference shall be held on **November 18, 2015, at 10:00 a.m.**

Dated: November 3, 2015  /s/Robert E. Littlefield
Albany, New York  Robert E. Littlefield, Jr.
  United States Bankruptcy Court Judge

---

diversions this question is not before the court.  Therefore, the court will refrain from addressing it at this time.